IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| PATI SIMMONS, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 2:22-CV-4149-NKL |
| v. | )<br>) |
| TEHUM CARE SERVICES, INC., et al., | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**ORDER**

Before the Court are motions to stay this case by Defendants Kavita Pendurthi, Mary Roth, Jack Matteson, Rochelle Nakoa, and Patricia Cahill (the "Employee Defendants") (Doc. 40) and Rebecca Ehlers, Cassandra Richards, Roy Chenault, Mikayla Diggle, and Mark Slate (the "State Defendants") (Doc. 46), given Plaintiff's case against Defendant Tehum Care Services, Inc. ("TCS") is covered by an automatic bankruptcy stay. As explained below, both motions are **DENIED**. The Court has no authority to extend the automatic bankruptcy stay, and it will not use its inherent authority to stay Plaintiff's claims against the remaining non-debtor defendants.

**I. Background**

Plaintiff's son Ronald Matthew Perkins died by suicide on November 24, 2020, while he was incarcerated at Boonville Correctional Center ("BCC"). Mr. Perkins' mother, Pati Simmons, brought this case under 42 U.S.C. § 1983 and Missouri's wrongful death statute. Plaintiff named as defendants TCS, which contracted with the State of Missouri to provide medical and mental health care services to prisoners in state custody; the Employee Defendants, all of whom are

1

medical professionals at one time employed by TCS; and the State Defendants, current and former employees of the Missouri Department of Corrections. (Doc. 24).

On February 13, 2023, TCS filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. (Doc. 36 at 1). Because the filing of a bankruptcy petition triggers an automatic stay of all ongoing judicial proceedings against a debtor that were filed before the bankruptcy petition, 11 U.S.C. § 362(a)(1), this Court stayed Plaintiff's claims against TCS only. (Doc. 36). The Employee and State Defendants then all moved to stay Plaintiff's claims against them. (Doc. 40); (Doc. 46).

## II. Discussion

### A. Whether this Court Can Extend the Bankruptcy Stay

To begin, none of the Defendants argue that the statutory automatic bankruptcy stay applies to them; instead, they ask this Court to *extend* the automatic stay. While this Court has the authority—indeed, the obligation—to determine whether an automatic bankruptcy stay applies in cases before it, *Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 384 (6th Cir. 2001), this Court has no authority to extend a bankruptcy stay beyond its statutory scope.

The filing of a bankruptcy petition triggers an automatic stay. 11 U.S.C.§ 362(a). "As its name implies, the automatic stay operates to immediately stay all non-bankruptcy collection activity" against the bankruptcy debtor. *In re W. Robidoux, Inc.*, No. 22-MC-9005-NKL, 2022 WL 17620269, at *7 (W.D. Mo. Dec. 13, 2022). However, the automatic bankruptcy stay does not protect non-debtor codefendants. *In re Panther Mountain Land Dev., LLC*, 686 F.3d 916, 921 (8th Cir. 2012); *In re W. Robidoux, Inc.*, 2022 WL 17620269, at *7. That said, a bankruptcy court has the power to "extend" the automatic stay in unusual circumstances using the injunctive powers provided by § 105 of the Bankruptcy Code. *In re W. Robidoux, Inc.*, 2022 WL 17620269, at *7

2

n.8 (distinguishing authority of bankruptcy court to extend stay to non-debtors using separate injunctive powers from the statutory automatic stay); *see also In re Panther Mountain Land Dev., LLC*, 686 F.3d at 926 ("[W]here an 'unusual-circumstances' 'exception' would be needed to justify extension of the automatic stay, § 105 is the more appropriate source of authority for assessing the propriety of a stay."). But because that power is sourced from the Bankruptcy Code, it is for the bankruptcy courts to decide whether such an injunction should issue in the first instance. *Lee v. RCN Corporation*, 2004 WL 2108577, *1 (N.D. Ill. 2004) (district court rejecting non-debtor defendant's arguments that the automatic stay should be extended to him because the debtor had an obligation to indemnify him, holding instead that the "bankruptcy court is in the best position to evaluate the effect on the bankruptcy estate, if any, of litigation against a nondebtor co-defendant. And the request should be filed by the debtor because it is the debtor's interests, not those of the nondebtor co-defendants, that are intended to be protected by an extension of the stay.").[1]

While the bankruptcy court supervising TCS's bankruptcy has indeed already found that such an injunction should issue in some cases, this case is not among them. The bankruptcy court continues to address the issue, and TCS is "evaluating whether there is a legal basis to extend the stay to" cases involving former TCS employees. Doc. 40, at 3. If TCS decides to seek such relief, it is certainly within the bankruptcy court's power to extend the stay if it finds doing so appropriate. But this Court has no authority to do so on the bankruptcy court's behalf.

---

[1] *See also Pub . Pension Fund Grp. v. KV Pharm. Co.*, No. 8-cv-1859, 2013 WL 1293816, at *2 (E.D. Mo. Mar. 28, 2013); *Jama v. Wright Cnty.*, No. 22-cv-483, 2023 WL 2238803, at *3 (D. Minn. Feb. 27, 2023); *Fratelli Cosulich Unipessoal, S.A. v. Specialty Fuels Bunkering, LLC*, No. 13-cv-00545, 2014 WL 2611547, at *7 (S.D. Ala. June 11, 2014).

3

### B. Whether the Court Should Nonetheless Stay this Case

While this Court has no authority to extend the automatic bankruptcy stay itself, it could nonetheless use its own inherent authority to control its docket to grant a stay. *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). The party seeking a stay must "make out a clear case of hardship or inequity." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). The burden is on the party "seeking to delay the usual course of discovery and trial." *Jones*, 72 F.3d at 1364. The arguments made by the Employee and State Defendants fall short.

First, the Employee Defendants argue that that, despite Plaintiff individually naming former TCS employees as defendants, the "real claim" is against TCS because all allegations against former TCS employees occurred within the scope and duties of their TCS employment. (Doc. 40 at 2). The Employee Defendants cite no authority for that proposition, and it is not clear why it would be true in this case. Plaintiff claims that the Employee Defendants *individually* violated her son's Constitutional rights by providing Constitutionally deficient care. As pled, it was the specific failures of the Employee Defendants—their deliberate indifference to a serious medical need—that violated Mr. Perkins' Eighth Amendment rights. This claim does not, indeed cannot, turn on anything that TCS did; each Employee Defendant must have personally been involved in the violation of Mr. Perkins' Constitutional rights to be liable under 42 U.S.C. § 1983. *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007). Nor could Plaintiff hold TCS liable for the Employee Defendants' actions, given *respondeat superior* is not an available theory of recovery under § 1983. *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (explaining that the "proper test" for determining whether a corporation acting under color of state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who

4

represent . . . official policy that inflicts injury actionable under § 1983"). Plaintiff's wrongful death claims are similarly aimed at the actions of the individual Employee and State Defendants, not TCS, and Plaintiff is not attempting to hold TCS liable for those actions. At bottom, Plaintiff's claims against the State and Employee Defendants very much pertain to the individual defendants, not TCS. And for that reason, staying this case is unnecessary. R*obinson Co. v. Paris & Sons, Inc.,* 180 F. Supp. 2d 1002, 1015 (N.D. Iowa 2001) ("[U]nusual circumstances do not exist where the debtor's insider is independently liable[.]").

Next, the Employee Defendants argue that "[t]raditionally, TCS has provided for the defense of its current and former employees in prisoner litigation lawsuits, and therefore any settlement or money paid out on behalf of the individuals has always been, in fact, money paid by TCS." (Doc. 40 at 2). What TCS has traditionally done is irrelevant. The Employee Defendants have presented no evidence that TCS is contractually *obligated* to defend its employees, nor pay any resulting judgment.[2] *Jama v. Wright Cnty.*, No. 22-CV-483, 2023 WL 2238803, at *3 (D. Minn. Feb. 27, 2023) (rejecting risk of indemnification by debtor as enough to justify a stay given non-debtor produced no evidence of debtor's obligation). And, as the Court has already explained, to the extent TCS is itself concerned that it may have such an obligation, the bankruptcy court is the proper audience for that argument, as it is better placed to understand and manage the TCS bankruptcy estate.

---

[2] And even if such evidence existed, it is not clear that it would justify a stay of Plaintiff's claims against the Employee Defendants. At bottom, these claims are pled against TCS' former employees. Any costs incurred will be incurred by the Employee Defendants, and any resulting judgment would be against the former employees. The automatic stay, and perhaps the bankruptcy itself, might prevent the Employee Defendants from requiring TCS to cover those costs. But the Employee Defendants cite no authority to suggest that such an outcome is Plaintiff's problem, especially when the Plaintiff is challenging the Employee Defendants' individual conduct.

5

The Employee Defendants further argue that extending the stay to them will promote efficiency and judicial economy, because any discovery conducted while the case against TCS is stayed "may have to be repeated after the stay is lifted, creating unnecessary costs and burdens on the Parties, including Plaintiff." Doc. 40, at 2. Furthermore, the Employee Defendants and State Defendants all argue that they cannot effectively defend themselves given they cannot access to materials possessed by TCS, which they claim are unavailable given the stay. *Id.* at 3; *see also* Doc. 47, at 5. Given the separate focus of Plaintiff's claims against TCS, the Court disagrees that permitting Plaintiff's case to proceed against the Employee and State Defendants, but not TCS, would meaningfully increase the Parties' costs and burdens. The Parties are more than capable of conducting discovery efficiently and in such a way that accounts for the fact that litigation may later resume against TCS. The boundaries placed on discovery by the Federal Rules of Civil Procedure offer an additional guardrail to protect the Parties from unreasonable costs resulting from the procedural complication presented by the TCS bankruptcy.

Furthermore, while all Parties seem to assume that the automatic stay prevents TCS from participating in discovery, this Court is far from convinced. No party presents any authority to that effect, and many courts have held the opposite. In but one example, the Bankruptcy Appellate Panel for the Ninth Circuit explained:

> In this case, Groner issued the subpoenas to Debtor in an effort to continue her prosecution of her claims against Henry, a non-debtor. Section 362(a) prohibits the commencement or continuation of an action against the debtor; to the extent that Groner was eliciting Debtor's testimony for purposes other than to continue the prosecution of her claims against Debtor, the proposed discovery did not violate the automatic stay, unless the issuance of subpoenas itself constitutes 'issuance or employment of process' against Debtor or a 'judicial proceeding' against Debtor. If this were true, a debtor could never be called as a witness (even in actions where the debtor is not a party) without relief from the stay. Such an interpretation of section 362(a) defies common sense and the spirit of the Code. Information is

6

> information, and we believe the discovery of it as part of the development of a case against non-debtor parties is permissible, even if that information could later be used against the party protected by the automatic stay.

*In re Miller,* 262 B.R. 499, 505 (B.A.P. 9th Cir. 2001). The Court agrees with this analysis. Again, if TCS is concerned that participating in discovery will in some way impact the management of its bankruptcy estate, it may direct those arguments to the bankruptcy court, but this Court does not interpret the automatic stay so broadly as to always prevent discovery from a bankruptcy debtor for use in a claim against a non-debtor.[3] Nor will the Court use its inherent authority to stay this case on that basis, especially because the claims against the non-debtors are independent from any claims against TCS and the amount of discovery in which TCS is implicated will likely be, relatively, small, at least until the stay is lifted.

Finally, the Employee Defendants argue that by permitting the case against them to go forward, the Court would increase the burden on itself by foreclosing the possibility of a single dispositive motion. This argument is unpersuasive. The legal claims against TCS are completely independent from those pled against the Employee Defendants. As a result, any dispositive motion will require separate legal and factual arguments. Whether those arguments are presented in one

---

[3] *Fratelli Cosulich Unipessoal, S.A. v. Specialty Fuels Bunkering, LLC*, No. 13-cv-00545, 2014 WL 2611547, at *10 (S.D. Ala. June 11, 2014); *Pride Family Brands, Inc. v. Carls Patio, Inc.,* No. 12-cv-21783, 2013 WL 4647216, at *3 (S.D. Fla. Aug. 29, 2013) ("In this case, Defendant debtor contends that § 362 and the Court's Order staying this matter prohibit the Plaintiff from taking the deposition of one of the Defendant's employees, absent relief from this Court. Plaintiff counters that it is only seeking discovery in relation to its claims against the non-debtor Defendants, and not against the Carl's Patio Defendants and thus contends that the deposition should proceed . . . [T]he undersigned concludes that the deposition should proceed." (footnote omitted)); *Am. Online, Inc. v. CN Prods., Inc.,* 272 B.R. 879, 882 n.6 (E.D. Va. 2002) ("[T]he automatic stay, even if applicable here, would not operate to preclude AOL from obtaining information from [the debtor] pursuant to the rules pertaining to discovery against non-parties." (citing *In re Miller* and other cases)).

7

document or multiple is, ultimately, inconsequential. Furthermore, given the claims against the State Defendants are distinct from those presented against the Employee Defendants, there will likely already be multiple dispositive motions. The Court, and the Parties, are capable of handling such an outcome.

At bottom, the arguments presented by both the Employee and State Defendants fall short of meeting their burden to establish that a stay is warranted in this case. As the Employee Defendants have noted, the bankruptcy court will soon hold a hearing to decide whether to use its authority to extend the bankruptcy stay to additional cases. (ECF 40 at 2). At that hearing, TCS may—but apparently has not yet decided to—argue that this case should be stayed, given its potential impact on the TCS bankruptcy. Unless and until the bankruptcy court issues such an order, this Court will not use its own inherent authority to stay Plaintiff's claims against the Employee or State Defendants.

## II. Conclusion

The Motion to Extend Stay by the Employee Defendants, (Doc. 40), is **DENIED**. Furthermore, the Motion to Extend Stay be the State Defendants (Doc. 46) is **DENIED.**

**IT IS SO ORDERED.**

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: 4/20/2023
Jefferson City, Missouri